UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| LINDSEY R. TAYLOR BRUNOTTE, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:15-cv-00042 |
| | ) Judge Sharp |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 15). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance under Title II and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). Upon review of the administrative record as a whole and consideration of the parties' filings, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be denied.

### I. INTRODUCTION

Plaintiff filed an application for disability insurance benefits and SSI under Titles II and XVI of the Act. An Administrative Law Judge ("ALJ") signed a Notice of Decision-Unfavorable, which was mailed to Plaintiff on February 19, 2014. Plaintiff timely filed an appeal with the Appeals Council, which issued a written notice of denial on May 28, 2015,

1

thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on February 19, 2014. (AR p. 13). Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity, since the alleged onset date of July 1, 2009, during the following periods (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severed impairments, the combination of which is severe: lumbar back disorder; status post right knee surgery; history of right ankle sprain; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work, except she can frequently climb, balance, stoop, kneel, crouch, or crawl. Also, she requires alternation between sitting and standing every 30 minutes.

6. The claimant's past work included work as a dispatcher, information clerk, telemarketer/solicitor, and order clerk. (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 16, 1977, and is a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education ad is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). [sic].

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR pp. 18-24).

## III. REVIEW OF THE RECORD

The following summary of the evidence of record is taken from Plaintiff's brief, Docket Entry No. 16 at pp. 2, 11-12).

> Lindsey Taylor Brunotte was born on March 16, 1977 and was 36 years old at the time of her hearing. (Tr. 36). She has a high school education with some college. She has no additional vocational training. (Tr. 36-37). Her work history includes working as a telephone operator, dispatcher, information clerk and order clerk. The Vocational Expert testified that Ms. Brunotte had sedentary semi-skilled jobs as an information clerk and telemarketer, sedentary skilled job as a dispatcher, medium skilled job as a shipping receiving clerk, and light semi-skilled jobs as an office clerk and a server. (Tr. 66). She was fired twice for to tardiness due to health problems. (Tr. 286). Tr. 290-294.
>
> Ms. Brunotte became unable to work on July 1, 2009, due to a slipped disc, knee/hip/ankle injury, and high cholesterol. She has a history of seizures and anxiety and was one time diagnosed with bipolar disorder. (Tr. 286).
>
> Lindsey Brunotte testified that the pressure and pain in her back and the sciatica that runs down her legs prevents her from sitting more than 15 - 20 minutes without changing position. (Tr. 41-42). She will then have to stand and walk around some for at least 15 minutes. On a scale of 1 to 10 with 10 being the worst pain, Ms. Brunotte testified her pain level was from a 7 to a 10. She goes to the emergency room every month to every few months when her pain gets to a level 10. (Tr. 48-49). She tries to sleep or stretch out on the couch after her children go to school. (Tr. 22). She has given up volunteering, yard sales, and playing outside with her kids. (Tr. 60).

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit

findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve

month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. Plaintiff's Assertion of Error**

Plaintiff argues that the ALJ erred (1) in her evaluation of the limiting effects of Plaintiff's pain; (2) in relying on the vocation expert's opinion; and (3) in failing to find that Plaintiff needed a "sit stand at will" option. (Docket Entry No. 16 at pp. 12-17). Plaintiff contends that the Commissioner's decision should be reversed and/or remanded for review. (*Id.* at 16).

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertion of error is addressed below.

*1. The ALJ erred in her evaluation of the limiting effects of Plaintiff's pain.*

Plaintiff asserts that the ALJ erred in evaluating the limiting effects of her pain. (Docket Entry No. 16 at 12). Plaintiff argues that the record shows that Plaintiff has significant pain, and there are objective findings that show the cause of her pain. In support, she asserts the following:

MRI of the lumbar spine in October 2009 revealed degenerative disc changes and small posterior left disc protrusion at L5/S1 with a slight loss of normal disc space. (Tr. 334). In June 2010, Dr. Robert Lowe saw Ms. Taylor-Brunotte for right leg pain with some back pain associated. X-rays revealed isthmic spondylolisthesis at L-5, S-1 which resulted in degenerative disc disease and a pinched nerve at the L-5 nerve root which would cause back pain and leg pain. Dr. Lowe felt surgery might be indicated in the future but her pain was fairly well controlled on arthritis mediations and she elected to hold off on surgery at this time. (Tr. 708-709).

Dr. Lowe repeated her MRI which showed instability at L-5 on S-1 with degenerative disc disease and foraminal stenosis. Dr. Lowe recommended surgery. (Tr. 710-711). On October 4, 2011, MRI of the lumbar spine revealed Grade I spondylolisthesis of L5 on S1, degenerative disc change at L5-S1 and left posterolateral disc protrusion at L5-S1. (Tr. 385).

On August 29, 2011, on supine exam, Dr. Williams found Ms. Brunotte had a very positive straight leg raise at 30° bilaterally with moderately positive tension signs acting like acute sciatica. She was advised to follow up with Dr. Lowe. (Tr. 320-321).

On September 22, 2011, Ms. Taylor-Brunotte went to Cookeville Regional Outpatient Rehabilitation for physical therapy evaluation due to low back pain and bilateral leg pain. She had decreased motion and strength of the trunk, decreased mobility and ambulation and abnormal tone. She was advised to attend four weeks of physical therapy. (Tr. 388-390).

On October 10, 2011, MRI of the lumbar spine revealed Grade I spondylolisthesis of L5 on S1, degenerative disc change at L5-S1 and left posterolateral disc protrusion at L5-S1. (Tr. 335).

On February 17, 2012, she returned to Dr. Lowe with increased low back pain. The impression was spondylolisthesis radiculopathy and lumbar strain and aenesthesiopathy. She was injected with Depo Medrol. (10F-1).

Ms. Brunotte clearly meets the first prong of the Duncan standard. She has objective evidence of an underlying condition that can cause her pain.

Ms. Brunotte also meets the second prong of the Duncan test. The objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

When Ms. Brunotte returned to Dr. Lowe in May 2011 her pain was no longer controlled with anti-inflammatories. (Tr. 710). On November 4, 2011, Dr. Lowe again noted that Ms. Brunotte's pain was quite miserable. Dr. Lowe refilled Ms. Brunotte's Tramadol and asked that she consider surgical treatment. (Tr. 536).

9

> On October 3, 2011, she went to Cookeville Regional Medical Center for lower back pain down both legs with occasional numbness in the right leg. She was assessed with acute low back pain and right sciatica. She received injections of Decadron and Toradol. (Tr. 379-381).
>
> Ms. Brunotte testified that on a scale of 1 to 10 with 10 being the worst pain, her pain level was from a 7 to a 10. She goes to the emergency room every month to every few months when her pain gets to a level 10. (Tr. 48-49). She tries to sleep or stretch out on the couch after her children go to school. (Tr. 22). She has given up volunteering, yard sales, and playing outside with her kids. (Tr. 60).

(*Id*. at pp. 13-15).

Defendant counters the ALJ properly evaluated Plaintiff's subjective complaints and found them not entirely credible, then detailed her reasoning in a thorough and proper manner. (Docket Entry No. 17 at 4). Defendant contends the ALJ identified multiple inconsistencies between the allegations and the record. Moreover, Defendant argues that Plaintiff's assertions "merely present another view of the evidence, and the substantial evidence standard means that Defendant must prevail." (*Id*. at p. 7).

The ALJ found the following with respect the Plaintiff's alleged pain and credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> The medical evidence confirms that the claimant fell in October 2007 and injured her right knee and right ankle []. A doctor recommended she do physical therapy, but she apparently did not follow through with this []. . . In February 2011, [] x-rays of the right knee were normal. No significant degenerative changes were seen [].
>
> Therefore, the undersigned finds that although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. Furthermore, that treatment has been essentially routine and/or conservative in nature. Regarding her back, after an examination in July 2010 by Dr. Lowe, his impression was

degenerative disease at L5-S1 with radiculopathy in the right lower extremity secondary to pars defect. MRI scans of the back confirmed degenerative disc changes at L5-S1[]. . .

Regarding her hip pain, x-rays of the right hip on November 20, 2010, showed no significant abnormality []. Thus, claimant's hip pain is not a medically determinable impairment and is, therefore, not a severe impairment.

***

Donita Keown, M.D., consultatively examined the claimant in January 2010. The claimant had an unremarkable straightway walk, tandem step test, toe lift, heel walk, one-foot stand, and Romberg test. She had no assistive device. . . Dr. Keown reported the claimant failed to demonstrate objective physical evidence for an impairment and no restrictions or limitations were endorsed []. The undersigned gives some weight to this opinion, as it shows the claimant's impairments are not disabling; however, the record demonstrates the claimant's lumbar back disorder, status post right knee surgery, history of right ankle sprain, and obesity cause limitation in functions and are, therefore, severe impairments.

***

On May 17, 2012, the claimant reported having back pain without movement. However, a medical examination showed the extremities appeared grossly normal with no appreciated pain with palpation.

Overall, the claimant has described participation in daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

The State agency medical consultants' physical assessments [] limiting the claimant to a range of light exertion are given some weight. However, the undersigned finds the capacity to perform a range of sedentary work is more consistent with the objective medical evidence and other evidence of record, including the claimant's activities. . .

In sum, the residual functional capacity [] is most consistent with evidence of record in its entirety, including the medical evidence and the other evidence. The record does not contain any opinions from any treating physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision have. Despite the claimant's alleged severe impairments, the evidence falls short of supporting proof of fully disabling impairment or combination thereof.

(AR at pp. 19-23).

The evaluation of Plaintiff's alleged symptoms rests with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Admin.*, 693 F.3d 709, 713–14 (6th Cir. 2012). The ALJ may consider daily activities as one factor in the evaluation of subjective complaints. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.

Here, the ALJ's evaluation of the subjective complaints, as contemplated in SSA regulations, is supported by substantial evidence in the record. Consequently, the ALJ's decision is conclusive and must be affirmed. *Warner v. Comm. Of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

*2. The ALJ erred by improperly relying on the VE's testimony.*

Plaintiff argues that the ALJ erred in relying on the testimony of a vocational expert witness because the witness identified jobs that Plaintiff could perform, but these jobs required a sit-stand work option per the residual functional capacity, a factor not included in the Dictionary of Occupational Titles ("DOT"). (Docket Entry No. 16 at 16).

The DOT does not list or describe all jobs, and the fact that a vocational expert describes a job that is not listed in the DOT does not create a conflict. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (citing SSR 00-4p). SSR 00-4p instructs the ALJ to identify and obtain reasonable explanations for any conflicts between the DOT and the vocational testimony. *See* SSR 00-4p. In the Sixth Circuit, an ALJ satisfies this duty if he or she asks the vocational expert whether their testimony is consistent with the DOT. *See Johnson v. Comm'r of*

*Soc. Sec.,* 535 F. App'x 498, 508 (6th Cir. 2013) (citing SSR 00-4p and *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)). "The fact that the VE and the DOT may use different terminology to describe employment positions does not establish that a conflict exists between these sources of evidence." *Lindsley*, 560 F.3d at 605.

In this case, the ALJ determined pursuant to SSR 00-4p, that the vocational expert's testimony was "consistent with the information contained in the Dictionary of Occupational Titles aside from the vocational expert's assessment of the impact of a sit/stand option, which was based on the expert's experience." (AR at p. 24). The Court finds no error here. Accordingly, the Court finds that substantial evidence supports the ALJ's determination in this regard.

*3. The ALJ erred by failing to find that Plaintiff needed a "sit stand at will" option.*

Plaintiff argues that the ALJ should have given her the option to sit/stand at will, not every 30 minutes as the ALJ found. (Docket Entry No. 16 at p. 17). As stated *supra*, the ALJ's findings are supported by substantial evidence in the record. Therefore, her decision is conclusive and must be affirmed. *Warner*, 375 F.3d at 390.

## V. CONCLUSION

In sum, the Court concludes that the findings of the ALJ are supported by substantial evidence on the record as a whole, and are free from legal error. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *E.g., Longworth c. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For all of the reasons stated, the Court will deny Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 15).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE